

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 17, 1959

The Honorable Zollie Steakley
Secretary of State
Capitol Station
Austin 11, Texas

Opinion No. WW-767

Re: Authority of the Secretary
of State to approve the applica-
tion of the Penn Mutual Life In-
surance Company of Pennsylvania
for a certificate of authority
authorizing the company to trans-
act the business in this State of
loaning its funds. Whether or not
the inclusion of the word "insur-
ance" within the company name
is in violation of Article 2.05 or
other provisions of the Business
Corporation Act, and other related
questions.

Dear Mr. Steakley:

Your opinion request briefly summarized is as follows:

On February 14, 1950 the Penn Mutual Life Insurance Company
was issued a permit by your office. The purpose for which it proposed
to transact business was to loan its funds in Texas. This permit was
granted pursuant to the direction of Article 3.27 of the Insurance Code,
which provides:

> "Any life insurance company not desiring to
> engage in the business of writing life insurance in this
> state, but desiring to loan its funds in this state, may
> obtain a permit to do so from the Secretary of State by
> complying with the laws of this state relating to foreign
> corporations engaged in loaning money in this state,
> without being required to secure a certificate of authority
> to write life insurance in this state."

The current application is an attempt to renew and extend the
existing permit. Your first specific question arises by virtue of the fact
that the Texas Business Corporation Act would seem to prohibit your
office from issuing a certificate of authority to an insurance company,
hence might be construed as repealing Article 3.27 of the Insurance
Code. Article 2.01B(4) of the Business Corporation Act provides:

"No corporation may adopt this act or be organized under this act or <u>obtain authority to transact business in this state under this act</u>. . .if any one or more of its purposes is to operate any of the following:. . . . (d) Insurance companies of every type and character that operate under the insurance laws of this state. . ."

You further advise us that after the effective date of the Business Corporation Act the Secretary of State adopted a departmental construction to the effect that its provisions are not applicable to insurance companies and that Article 3.27 and 3.57 of the Texas Insurance Code were repealed by implication by said Act.

The history of Article 3.27 begins in 1907 when the so-called Robertson Law became effective. Modeled after corresponding provisions in the New York Insurance Law, the Robertson Law imposed much more stringent requirements upon foreign companies doing an insurance business in this state than formerly was the case. As a result of its passage many foreign companies withdrew from the state, some completely, but some merely limiting their activities to the loaning of their funds in Texas. The Attorney General, after 1907, took the position that the John Hancock Mutual Life Insurance Company of Massachusetts was doing business in the state illegally and brought suit to cancel its permit. The company had been transacting a loan business in Texas for many years but had never transacted a life insurance business here. (The trial court held in favor of the defendant and the appeal was dismissed on a technicality.) Shortly thereafter, on February 3, 1909, the Legislature passed Article 4790, the forerunner of the present Article 3.27. As stated in Attorney General Opinion No. 2610,

"We think there can be no doubt of the intention of the Legislature in passing this statute. It was evidently considered desirable in the interest of the public to permit a life insurance company to enter the state for the purpose of lending their funds. It was then evident that a large number of such companies would not enter this state and conduct a life insurance business within its borders and subject themselves to the provisions of the Robertson Law. Manifestly, this statute was passed to declare specifically that such a corporation was permitted and authorized by the State of Texas to engage in the business of lending its funds in Texas. It is probable, we think, that the effect of the statute was to do away with the Attorney General's action and position taken in the John Hancock case."

The opinion also points out that "a corporation chartered for the purpose of writing life insurance has, in the absence of statutory inhibition or express limitations found in the charter, the implied power to lend its funds." In this connection your opinion request states that the charter of Penn Mutual Life Insurance Company authorizes it "to insure the lives of persons in every insurance appertaining thereto; to grant and dispose of an annuity; and to insure against disablement by contract supplemental to contracts of life or endowment insurance, and generally to transact the business of life insurance on the level premium or legal reserve plan as a mutual company." There is nothing in this purpose clause to prevent the company from lending its funds. (Therefore, the answer to your third question, inquiring as to whether the proposed activities of the company in Texas would be outside its charter powers, is answered in the negative.)

Opinion No. 2610 continues by pointing out that,

"An insurance company coming into this state under the provisions of Article 4790 (Article 3.27) does not apply to the Insurance Commissioner for its permit. It must apply to, and the permit must be obtained from, the Secretary of State. It is subject to the control of that officer in such cases as made and provided. It does not enter this state for the purpose of providing any business which the Commissioner of Insurance is designed to control. Indeed, it is not authorized to transact such a business, and the doing of such a business without color of authority would result in the forfeiture of its permit to do business in this state."

"..."

"Since there is nothing to indicate that jurisdiction has ever been given to the Commissioner of Insurance over such companies and the bare presence of a foreign corporation, which may write insurance, and indeed may be formed for that purpose in the state of its creation, in this state for a purpose other than that of writing insurance is entirely insufficient to operate in behalf of such jurisdiction."

We see then that prior to Article 3.57 (or Article 4760) an insurance company had the implied power to enter this state solely for the purpose of loaning its funds by securing a permit from the Secretary of State so to do; further, that Article 3.27 was passed to correct the contrary position taken by the Attorney General in the matter. Therefore, an insurance company entering the state solely to loan its funds and obtaining a certificate

therefor from the Secretary of State, although doing so under the express authority of Article 3.27, can in no sense be said to be operating under the Insurance Laws of this State. This being true, your office has the authority under the Business Corporation Act to issue a certificate of authority to the Penn Mutual Life Insurance Company for the stated purpose.

Your second question asks whether or not the inclusion of the word "insurance" within the company name indicates or implies that it would be authorized to transact business in this state for any purpose other than that set forth in the certificate of authority in violation of Article 2.05 or any other provision of the Texas Business Corporation Act. Article 2.05A(2) reads:

> "It (the corporate name) shall not contain any word or phrase which indicates or implies that it is organized for any purpose other than one or more of the purposes contained in its articles of incorporation."

It will be noted that this provision relates to articles of incorporation and not certificates of authority as stated in your opinion request. Article 2.05 applies in general to domestic corporations unless the contrary appears in a particular section. For example, 2.05B provides that "any domestic or foreign corporation having authority to transact business in this state, may do so under an assumed name. . ." No such reference to foreign corporations appears in 2.05(2). On the other hand, Article 8.03 is the general article dealing with the "corporate name of Foreign Corporations" and as such is controlling of the question before us. It contains no provision similar to that in 2.05(2) and hence we find it unnecessary to decide whether or not the name in question violates such requirement.

Your last question inquires as to whether in the event you are authorized to approve subject application for a certificate of authority, such certificate should be limited by the restriction "without banking, discounting or insurance privileges". You refer us in this connection to our Opinion WW-440. The reasoning of such opinion is not applicable to the instant situation for the reason that Article 3.27 specifically authorizes a certificate of authority for the purpose requested. WW-440 dealt with a situation in which the restrictive words quoted above were a part of the statutory purpose clause prior to the passage of the Business Corporation Act. This demonstrated by the second paragraph of the summary of WW-440 which reads:

"Words of limitation or restrictive provisions contained in lawful statutory purpose clauses of private corporations for profit in effect prior to the enactment of the Business Corporation Act are still in full force and effect as to any lawful purpose for which a corporation may be formed under the provisions of Article 2.01A, Business Corporation Act."

## SUMMARY

The office of the Secretary of State has the authority to issue a certificate of authority to Penn Mutual Life Insurance Company of Pennsylvania authorizing the company to transact the business in this state of loaning its funds, Art. 3.27 of the Insurance Code not having been repealed by the Business Corporation Act. It may do so without the addition of restrictive wording. The proposed purpose is within the charter powers of the company.

Very truly yours,

WILL WILSON
Attorney General of Texas

By R. V. Loftin, Jr.
Assistant Attorney General

RVL:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
C. K. Richards
B. H. Timmins
W. O. Schultz
Robert Bud Lewis

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore